IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE SMITH, N01634, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  Case No. 19-cv-637-RJD |
| | ) |
| JOHN BALDWIN, et al., | ) |
| | ) |
|    Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

Plaintiff, an inmate within the Illinois Department of Corrections ("IDOC), filed this suit pursuant to 42 U.S.C. §1983, alleging Defendants violated his Eighth and Fourteenth Amendment rights of the U.S. Constitution. Plaintiff received three disciplinary tickets for the same incident that occurred at Stateville Correctional Center in January 2018. Plaintiff then transferred to Menard Correctional Center ("Menard") and following three disciplinary hearings he was found guilty of the third ticket and punished with six months of segregation. While in segregation, Plaintiff alleges that he endured filthy living conditions and was denied cleaning supplies, hygiene items, and clothing. He only had access to dirty water, which made him ill and made his skin itch.

After the Court conducted a threshold review pursuant to 42 USC §1915A and ruled on the issue of administrative remedy exhaustion, Plaintiff's case proceeded on the following claims:

> Count 1: Fourteenth Amendment claim against Mitchell, Hart, Brookman and Lashbrook for depriving Plaintiff of a protected liberty interest without due process of law by punishing him for his third re-issued ticket with six months of segregation in unusually harsh conditions

after expunging his first and second tickets for the same offense.

Count 3:  Eighth Amendment claim against Mitchell, Hart, Brookman, Lashbrook, and Baldwin for subjecting Plaintiff to unconstitutional conditions of confinement in segregation at Menard as punishment for the third ticket.

Count 4:  Eighth Amendment claim against Lashbrook and Baldwin for their deliberate indifference to Plaintiff's complaints about unsanitary drinking water and his related illness.

This matter now comes before the Court on Defendants' Motion for Summary Judgment (Docs. 63 and 64). Plaintiff filed a Response (Doc. 65).

**Factual Background**

Plaintiff resided at Stateville Correctional Center ("Stateville") in January 2018. According to a Disciplinary Report authored by Defendant Mitchell, two females visited Plaintiff and another inmate on January 14, 2018 (Doc. 64-16, p. 1). Defendant Mitchell testified at his deposition that he observed the visit from the Investigations Office (Doc. 64-10, p. 10). During the visit, the females changed seats several times and bought several food items from the vending machines (Doc. 64-16, p. 1). One of the females retrieved a small package from her boot and placed it inside a potato chip bag (*Id*.). Correctional staff escorted Plaintiff and the other inmate from the visitor room, and other intel/internal affairs staff observed Plaintiff dropping a small package on the floor (*Id*. p. 2). Testing performed by the Illinois State Police revealed the substance contained opiates (*Id*.). Plaintiff contends in his Response that the "facts" related to the January 14, 2018 visit are disputed but cites no portion of the record to explain the dispute.

The following facts, however, are not disputed. Plaintiff was placed on "Investigative Status" on January 14, 2018 (Doc. 64-10, p. 26). An intel officer at Stateville wrote Plaintiff a disciplinary ticket for violation of Department Rule 203 ("Drugs and Drug Paraphernalia") related

to "drug test" (Doc. 64-17, p. 1). Another officer wrote Plaintiff a second ticket for violating Rule 203 by failing to provide a urine sample (*Id.*, p. 2). Plaintiff transferred to Menard, and the Menard Adjustment Committee (consisting of Defendants Hart and Brookman) dismissed both tickets (Doc. 64-17).

Defendant Thompson testified that IDOC Rule 504.30 requires that an investigation last no more than 30 days (Doc. 64-10, p. 31-32). On May 8, 2018, Defendant Thompson completed a disciplinary report for the January 13, 2018 incident (Doc. 64-16). Defendant Thompson testified that he could not complete the report sooner because he did not have verification from the ISP regarding composition of the confiscated substance (Doc. 64-10, p. 15). Plaintiff received the disciplinary report on May 10, 2018 (Doc. 64-16, p. 1; Doc. 64-3, p. 2). Prison staff immediately transferred him to segregation (Doc. 64-2, p. 5). In segregation, Plaintiff's mattress was not covered in plastic (as mattresses elsewhere in the prison were) and it smelled of "someone else's urine." There was feces and black and yellow "stuff" on the walls. There was trash on the floor.

Defendants Brookman and Hart held an Adjustment Committee hearing on May 15, 2018 (Doc. 64-15, p. 1) Plaintiff pleaded not guilty "because it is out of time allowance" (*Id.*). Plaintiff received notice of the disciplinary report more than 24 hours before the hearing. He did not call any witnesses. Plaintiff was found guilty of a "drugs and drug paraphernalia" offense related to opiates and received six months in segregation, as well as restrictions in commissary and contact visits (*Id.*). He received a copy of the final report that described the evidence relied upon by the committee and the reason for the disciplinary action. At the hearing, Plaintiff told Defendant Brookman about the conditions of his cell in segregation (Doc. 64-2, p. 4-5). He did not, however, discuss the conditions of his cell with Defendant Hart (Doc. 64-2, p. 4).

On multiple occasions in May and June 2018, Plaintiff wrote letters to Defendants Lashbrook (Warden at Menard) and Baldwin (Director of the IDOC) regarding the conditions in segregation.  Warden Lashbrook made rounds in segregation, and Plaintiff spoke with her on five or six occasions regarding the conditions of his cell in segregation; Warden Lashbrook does not recall these conversations.  Plaintiff never met Defendant Mitchell (an officer in the Investigations Unit at Stateville), so he never told him about the conditions of his cell in segregation.

The water in Plaintiff's segregation cell made him sick.  It tasted like there were sand grains in it.  His hands itched constantly and his skin peeled.  Plaintiff wrote letters regarding the water to Defendants Lashbrook and Baldwin.  In his verified Complaint, Plaintiff stated that he "let Defendants Lashbrook, Baldwin…[sic] with his letters and grievances that he wrote and sent to them which is the proper procedure for putting the prison and the officials on notice of a problem…Defendants never responded back to Plaintiff's complaints so they turned a blind eye to the problem."  There is no record that Defendants Lashbrook or Baldwin ever saw a grievance from Plaintiff that mentioned the water in his cell made him sick and irritated his skin.  Plaintiff attached two grievances to his Complaint regarding the conditions in segregation (Doc. 6, p.39-41).  One of those grievances (dated May 17, 2018) mentioned that "the hot water doesn't work so I'm unable to wash up in my cell" (Id. p. 41).  The other grievance (dated August 4, 2018) mentions that he had "started to itch and I've got some bumps all over my body." (*Id*. p. 40).  Plaintiff did not sign those grievances and there is no record that any prison official received and/or reviewed them.

Plaintiff submitted multiple grievances regarding the disciplinary tickets that were expunged, the report authored by Defendant Mitchell, and the hearing with Defendant Brookman and Hart (Doc. 64-12; Doc. 64-14); Plaintiff signed those grievances and Defendant Lashbrook

reviewed and issued a decision on at least one of them, concurring with a grievance officer at Menard that Plaintiff's disciplinary action related to the May 8, 2018 disciplinary report "shall remain as imposed" (Doc. 64-12, p. 1). However, the IDOC Administrative Review Board ultimately recommended, after a "compliance check of the procedural due process safeguards outlined in DR504," that the disciplinary report "be expunged due to non-compliance with DR504.3" (Doc. 64-11).   On November 29, 2018, Defendant Baldwin instructed the Adjustment Committee and Records office at Menard to expunge the disciplinary report (*Id*.).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Count I: Deprivation of Due Process (14th Amendment)**

The 14th Amendment prohibits the state from depriving persons (including prisoners) of

"life, liberty, or property, without due process of law." *Scruggs v. Jordan*, 485 F.3d 934, 938 (7th Cir. 2007) (citing U.S. CONST. AMEND. XIV §1). Of course, "prison officials must necessarily restrict the liberty of those they house." *Id*. (*citing Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)). To prevail, a prisoner must establish that 1) "he has a liberty or property interest that the state has interfered with"; and 2) "the procedures he was afforded upon that deprivation were constitutionally deficient." Defendants urge the Court to go no farther in its analysis than determining whether Plaintiff had a liberty or property interest with which Defendants interfered. Defendants point to case law finding that six months in segregation, by itself, does not trigger a liberty interest. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743-44 (7th Cir. 2013). However, Plaintiff contends that he was subjected to unconstitutional conditions of confinement during his stay in segregation, namely, that his cell was filthy and unsanitary. A prisoner's time in segregation may invoke the 14th Amendment's procedural protections if it is constitutes "an atypical and significant hardship when compared to the ordinary incidents of prison life." *Townsend v. Cooper*, 759 F.3d 678, 685-86 (7th Cir. 2014). For example, the plaintiff in *Townsend* "easily met this standard" by describing how he was denied clothing, bedding, or a mattress for weeks and months at a time. *Id*. at 683.

Regardless of whether the filth in Plaintiff's segregation cell was so significant that it invokes the 14th Amendment, the record reflects that Plaintiff was afforded the appropriate procedural protections. Prisoners in disciplinary proceedings are entitled to: "1) advance (at least 24 hours before hearing) written notice of the claimed violation; 2) the opportunity to be heard before an impartial decision maker; 3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); or 4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Scruggs*, 485

F.3d at 938 (*quoting Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). Plaintiff received the disciplinary report more than 24 hours before the hearing and, after the hearing, he received a written statement from the Adjustment Committee that contained the evidence they relied upon and the reason for the disciplinary action. The record contains no evidence that Plaintiff was denied the opportunity to call witnesses or present documentary evidence, or that he was not heard before an impartial decision maker. Accordingly, the undisputed evidence in the record reflects that the disciplinary report and May 15, 2018 hearing comported with the procedural protections required by the 14th Amendment.

Plaintiff, however, contends that he "was not given even minimal due process" at the May 15, 2018 hearing because Defendants Brookman and Hart proceeded with the hearing on the disciplinary report despite Plaintiff's objection that it was "out of time." At his deposition, Defendant Thompson (who wrote the report) seemed to concede that it was "out of time" pursuant to Department Rule 504.3 because the investigation lasted longer than 30 days (Doc. 64-10, p. 31-32). Rule 504.3 is the rule relied upon by the ARB when recommending the report be expunged (a recommendation that Defendant Baldwin enforced), but the ARB did not state which provision of Rule 504.3 was violated. The parties do not cite or quote Rule 504.3 in their briefings-they simply adopt Defendant Thompson's deposition testimony as accurate. In the interests of accuracy and completeness, the Court provides Rule 504.3 in its entirety:

> **a)** Every employee has the duty to observe the conduct of offenders.
>
> **b)** If an employee observes an offender committing an offense, discovers evidence of its commission or receives information from a reliable witness of the conduct, the employee shall promptly prepare a disciplinary report. However, if the infraction is listed in the 400 series in Table A and the employee determines a disciplinary report is not necessary to resolve the situation, the employee may orally reprimand the offender.
>
> **c)** The disciplinary report must be fully completed. The reporting employee shall provide

the following information to the extent known or available:
**1)** The name and identification number of the offender.

**2)** The place, time and date of the offense.

**3)** The offense that the offender is alleged to have committed.

**4)** A written statement detailing the conduct observed.

**5)** The names of offenders, employees and visitors who were witnesses. The identity of witnesses may be withheld for reasons of security provided a statement to that effect and the information the confidential source provided are included on the disciplinary report to the extent the information can be included without jeopardizing security.

**6)** The signature of the reporting employee and the date and time the report is completed.

**d)** If an offender is suspected of committing a disciplinary offense, an investigative disciplinary report, hereinafter referred to as an investigative report, shall be issued that reasonably informs the offender of the subject of the investigation to the extent that safety and security allow. In no event shall an investigative report be served upon an offender more than eight calendar days after the suspected commission of an offense or the discovery of an offense, whichever is later, unless the offender is unavailable or unable to participate in the proceeding.

**e)** Service of a disciplinary report upon the offender shall commence the disciplinary proceeding. In no event shall a disciplinary report be served upon an offender more than eight calendar days after the commission of an offense or the discovery of an offense unless the offender is unavailable or unable to participate in the proceeding.

20 ILL. ADMIN. CODE § 504.3. (Amended at 41 Ill. Reg. 3869, effective 4/1/2017).

It appears to the Court that Plaintiff should have received the disciplinary report *eight* days after the offense-not 30-but he received it more than 90 days after the incident. Regardless, the Seventh Circuit has "repeatedly rejected the notion that any and all state prison rules and regulations [involving mandatory language]" trigger the due process clause. *Colon v. Schneider*, 899 F.2d 660, 669 (7th Cir. 1990). To determine whether a state prison rule/regulation creates a "federally protected liberty interest", the Court looks at the language of the rule/regulation.

Regulations that "guide the prison staff rather than the inmates" do not "create a protectable liberty interest." *Id*. Department Rule 504.3 directs prison staff in their investigations and report-writing. It does not direct the actions of the inmates. As the Supreme Court and Seventh Circuit have frequently stated, "federal courts should be reluctant to restrict unnecessarily (for example, by recognizing federal liberty interests) the judgment of experienced prison administrators, especially those involving internal prison security and discipline." *Id*. Because the parties do not dispute that Plaintiff was afforded the required due process protections for the disciplinary proceeding that resulted in six months segregation, summary judgment is granted in favor of Defendants on Count I.

**Count III: Unconstitutional conditions of confinement (8th Amendment)**

Plaintiff alleges that Defendants Mitchell, Hart, Brookman, Lashbrook, and Baldwin subjected him to filthy conditions in his segregation cell. Subjecting a prisoner to inhumane conditions violates "the essence of the Eighth Amendment." *Thomas v. Blackard*, 2 F. 4th 716, 720 (7th Cir. 2021) (*citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To prevail on this claim, Plaintiff must establish that: 1) he was denied "the minimal civilized measure of life's necessities" (an objective inquiry) that created "an excessive risk to the inmate's health and safety" and 2) Defendants "knew of and disregarded this excessive risk of harm" to Plaintiff (a subjective inquiry). *Id*. (internal citations omitted).

Plaintiff's description of his cell-feces and "black and yellow stuff" on the walls, trash on the floor, a urine-soaked mattress (not his own) creates a genuine issue of material fact regarding whether he was subjected to an excessive risk to his health, as does his testimony that he was denied cleaning supplies. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (internal citations and quotations omitted). Prison officials must "provide 'reasonably

adequate..sanitation, bedding, hygienic materials." *Id*. (*quoting Gills v. Litscher*, 468 F.3d 493 (7th Cir. 2006)).

For the subjective inquiry, Plaintiff must provide evidence that Defendants were aware of the conditions in his cell. He has satisfied this inquiry for Defendants Lashbrook and Brookman, despite their testimony that they do not remember communicating with him and their argument that the "record is simply void of any evidence" that they knew about the conditions in his cell. Plaintiff testified that he spoke with Defendant Lashbrook about the conditions in his cell on five or six occasions when she conducted rounds in segregation. He only spoke with Defendant Brookman on one occasion (at the May 15, 2018 hearing) about the conditions in his cell, but because Plaintiff has testified that such a conversation occurred, the Court cannot find that the record is void of evidence that Defendant Brookman (or Defendant Lashbrook) were unaware of the conditions in Plaintiff's cell. Consequently, whether Defendants Lashbrook and/or Brookman knew of and disregarded an excessive risk of harm to Plaintiff are questions for the jury.

The same is not true for Defendants Mitchell, Hart, and Baldwin. The record reflects that Defendant Mitchell had no knowledge of the conditions in Plaintiff's cell in segregation at Menard; Defendant Mitchell worked at Stateville and Plaintiff admitted that he never told Defendant Mitchell about those conditions (Doc. 64-2, p. 4). Plaintiff likewise testified that he did not tell Defendant Hart about the conditions in his cell (*Id.*). Plaintiff stated in his verified Complaint that he sent Defendant Baldwin letters regarding the conditions of his cell, but no evidence suggests that Defendant Baldwin actually received and reviewed those letters. Without evidence that suggests Defendant Baldwin actually read the letters, the Court cannot infer that he was aware of the conditions in Plaintiff's segregation cell. Because Plaintiff has failed to produce evidence that Defendants Baldwin, Hart, and Mitchell were aware of an excessive risk of harm to his health,

summary judgment is granted in their favor.

**Count IV: Deliberate indifference (8th Amendment)**

Plaintiff alleges that Defendants Lashbrook and Baldwin were deliberately indifferent to the water provided to Plaintiff in segregation. To prevail on Count IV, Plaintiff must establish that Defendants Lashbrook and Baldwin knew of and "consciously disregarded a substantial risk of harm" to Plaintiff because of the water in his segregation cell. *See Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022). There is no record in the evidence that either Defendant Lashbrook or Baldwin were aware that there was sand in the water in Plaintiff's cell, or that his skin was itching and peeling after washing in it. Plaintiff stated in his verified Complaint that he sent Defendants Lashbrook and Baldwin letters regarding the water. However, simply because Plaintiff sent Defendants grievances and letters does not mean they received them, reviewed them, and therefore knew about the water. The record is devoid of any evidence that Defendants actually received any letters or grievances from Plaintiff regarding the water in his cell or otherwise knew about the water in his cell. Accordingly, summary judgment is appropriate in favor of Defendants on Count IV.

**Qualified Immunity**

Finally, Defendants contend that summary judgment should be awarded in their favor because they are shielded by the doctrine of qualified immunity. To evaluate the defense of qualified immunity, the Court determines whether Defendants' conduct violated a constitutional right *and* whether that specific constitutional right was "clearly established at the time of the alleged violation." The Court has already determined that there is no genuine issue of material fact regarding whether Defendants violated Plaintiff's 14th Amendment right in Count I, or Eighth Amendment right in Count IV, or whether Defendants Mitchell, Hart, or Baldwin violated

Plaintiff's Eighth Amendment right in Count III. A genuine issue of material fact exists regarding whether Defendants Lashbrook and/or Brookman violated Plaintiff's Eighth Amendment right in Count III by subjecting him to unconstitutional conditions of confinement. However, in 2018 case law clearly established that subjecting an inmate to a cell covered in feces and other bodily excrement constituted cruel and unusual punishment. *Vinning-El*, 482 F.3d at 924. Defendants Lashbrook and Brookman are therefore not entitled to summary judgment on their qualified immunity defense.

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 63) is **GRANTED IN PART and DENIED IN PART**. Summary judgment is granted in favor of Defendants on Count I, in favor of Defendants Mitchell, Hart, and Baldwin on Count III, and in favor of Defendants Lashbrook and Baldwin on Count IV. Count I of Plaintiff's Complaint against Defendants Mitchell, Hart, Brookman and Lashbrook is dismissed with prejudice. Count III of Plaintiff's Complaint against Defendants Mitchell, Hart, and Baldwin is dismissed with prejudice. Count IV against Defendants Lashbrook and Brookman is dismissed with prejudice. The Clerk of Court is directed to enter judgment accordingly at the close of the case.

Defendants' Motion for Summary Judgment in favor of Defendants Lashbrook and Brookman on Count III is DENIED. This case proceeds to trial on Count III against Defendant Lashbook and Brookman only.

**IT IS SO ORDERED.**

**DATED:   July 1, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**